UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ORIX FINANCE CORP., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:08-CV-0550-B |
| | § | |
| NEXBANK, SSB, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM ORDER

Before the Court is Plaintiff's Motion to Remand and Brief in Support (doc. 4). For the reasons that follow, the Court declines to rule on this Motion and hereby notifies the parties that it is considering transferring this case to the U.S. District Court for the District of New Jersey for referral to the Bankruptcy Court administering *In re Marcal Paper Mills, Inc.* If the parties object to the transfer of this case, they may, within 14 days of the date of the order, file briefing to show cause why this case should not be transferred.

### I. BACKGROUND

On December 30, 2005, Marcal Paper Mills, Inc. ("Marcal"), NexBank, SSB ("NexBank"), and various lenders entered a $50,000,000 Second Lien Term Loan and Security Agreement ("Second Lien Loan Agreement"), in which Marcal was the borrower and NexBank was the agent. (Mot. to Remand 1). ORIX Finance Corporation ("ORIX") later purchased a $10,000,000 pro rata share in the principal amount of Marcal's obligations under the Second Lien Loan Agreement, in

which NexBank again served as the agent. (*Id.* at 1-2). Marcal filed a petition for relief under Chapter 11 of the U.S. Bankruptcy Code with the United States Bankruptcy Court for the District of New Jersey on November 30, 2006. (*Id.* at 2). Marcal then obtained debtor in possession ("DIP") financing from a number of lenders that did not include ORIX. (*Id.*). Marcal and the DIP lenders agreed to the sale of substantially all of the Debtor's assets and the distribution of the proceeds. (*Id.*). Pursuant to this asset sale, the parties proposed an Asset Purchase Agreement ("APA"). (*Id.*). Under the APA, a newly formed LLC would acquire substantially all of Marcal's assets. (*Id.*). The purchase price would include a voluntary "credit bid" of $35,000,000 against Marcal's indebtedness under the Second Lien Agreement. (*Id.*). Under this credit bid, NexBank would voluntarily release a portion of Marcal's indebtedness, and that reduced portion would "pay the purchase price for Marcal's assets 'against the indebtedness of Seller owing under the Second Lien Agreement.'" (*Id.* at 2-3).

This APA transaction required the bankruptcy court's approval for the bidding procedures and the subsequent sale of Marcal's assets. (*Id.* at 3). The bankruptcy court held a hearing on the motion for approval of the bidding procedures on November 16, 2007 and issued an order granting this motion on November 20, 2007. (*Id.* at 4). Based on a $35,000,000 credit bid, the Debtor moved the bankruptcy court to approve the sale, and the court held multiple hearings to consider the sale. (*Id.* at 4). ORIX claims that it never consented to this sale, which would have the result of converting Marcal's debt to ORIX into equity. (*Id.* at 3). On the day before the January 15, 2008 hearing, ORIX objected that NexBank did not have the authority to make the credit bid. (*Id.* at 4). United States Bankruptcy Judge Morris Stern declined to resolve this dispute between ORIX and NexBank. (App. 25-33). Instead, the parties agreed that ORIX would withdraw its objection but reserve its right to later raise it. (*Id.*)

On February 29, 2008, ORIX sued NexBank in Texas state court (1) alleging "breach of its contractual obligations under the Second Lien Loan Agreement, particularly the requirement of obtaining ORIX's written consent to any discharge or release of Marcal's indebtedness under the agreement" and (2) seeking "declaratory judgment that it is not required to reimburse NexBank for its out-of-pocket costs associated with the sale of Marcal's assets, and that ORIX is not a Delinquent Lender under the terms of the Second Lien Loan Agreement." (*Id.* at 8). On March 28, 2008, NexBank removed the case to this Court claiming that it was a core proceeding that arises in and relates to the bankruptcy case in New Jersey. (Notice of Removal 1). ORIX filed the instant motion to remand on April 17, 2008 (doc. 4); NexBank filed its Response on May 16, 2008 (doc. 7); and ORIX filed its Reply on June 2, 2008 (doc. 9).

## II. ANALYSIS

ORIX bases its Motion to Remand on 2 grounds: (1) "the bankruptcy court has functionally abstained from ruling on this dispute" and (2) "[t]his contractual dispute between ORIX and NexBank does not arise from or relate to the Marcal Bankruptcy." (Mot. to Remand 9, 11). ORIX cites the following statements made during the January 15, 2008 hearing before Judge Stern that support its argument that the bankruptcy court found abstention appropriate:

- Judge Stern: "So that's a fight over there. Now, they are either right or wrong. Why should I resolve that issue?" (App. 32).
- Judge Stern: "Well, suppose the order recites a reservation which says I'm not deciding the Orecks [sic-'ORIX'] dispute, and Orecks and can reserve its rights to go sue on the authority issue in a court of competent jurisdiction, and if they have been damaged by the purported managing partner of this group, so be it. That's a matter that's quite independent of the very, very serious and sensitive bankruptcy issues here, where what you are asking for could well cause a liquidation of an on-going company the loss of the jobs, the loss of all of the peripheral benefits to the community and the state. Why –you know, I'm not –I don't want to deny you your rights. Don't misunderstand me. I just

- 3 -

- don't want your private right to impact on this public issue in a way that destroys the race before this Court." (App. 32-33).
- Judge Stern: "[W]hy should I take my eye off the ball and decide a matter that is a pre-petition contract issue between two financiers?" (App. 35-36).
- Mr. Zinman (ORIX's attorney): "The only implication on that that I have to think through is in terms of forum, because we had been discussing perhaps a different forum."
  Judge Stern: "Oh. Perhaps is not even close."
  Mr. Zinman: "Right."
  Judge Stern: "You're out of here ."
  Mr. Zinman: "But, Your Honor –"
  Judge Stern: "I don't want to see either of you on this issue."
  Mr. Zinman: "I understand. The best judge of what happened in terms of the bid procedures may be Your Honor."
  Judge Stern: "Oh, no, no, no. There–"
  Mr. Zinman: "If I can have a –"
  Judge Stern: "I'm not a judge of that at all, and I certainly won't be a witness."
  (App. 37-38).

However, NexBank argues that Judge Stern was "blind-sided" by ORIX's objection filed less than 24 hours before the hearing and did not have the time or resources to consider the objection. (Resp. 21). NexBank also contends that Judge Stern's ability to consider ORIX's objection was limited because the objection only included excerpts from the Second Lien Loan Agreement. The following statements made by Judge Stern at the hearing support NexBank's position:

- "But Mr. Howley, I think there's good sense to what you're saying, but you're asking me to rule on that in the context of a hearing, just as your counterpart, until the last moment, was asking me to rule in the opposite way, which has very little to do with the guts of your inter-party arrangement. . . But it seems to me the resolution is simple as it would relate to the motion to approve the sale. It's simply saying the sale can go forward, and each side reserves their rights with respect to these arguments . . ." (App. 34-35).
- "But this dispute is very far off the center line of what's before this Court, and for you to ask me to decide definitively that the language in the –what you call the amendment provision, 16.16 of the second lien credit agreement, when I don't even have the second, I've got two pages here, and –you know, I've got a couple of snippets, and . . .you want me to take time out –and that you is both of you, from a hearing that is beginning to move towards an emergency

- 4 -

state." (App. 35).

The Court emphasizes the importance of the context of Judge Stern's statements. ORIX's objection had been filed the preceding day, and Judge Stern was trying to move forward with the sale. In addition, he was not addressing a motion to remand. Rather than attempting to interpret Judge Stern's statements and apply them to a context for which he did not intend (a motion to remand), the Court finds that the appropriate procedure is to refer the case to the bankruptcy court.[1] This referral will give Judge Stern the opportunity to determine whether remand or abstention is appropriate in the context of a fully briefed motion to remand as opposed to a last minute objection that threatened to delay important and time-sensitive proceedings.

A district court within the Fifth Circuit confronted a similar situation in *Marquette Transportation Co. v. Trinity Marine Products, Inc.*, 2006 WL 2349461 (E.D. La. 2006). That case was originally filed in Louisiana state court and removed to federal court pursuant to 28 U.S.C. § 1452(a) based on a Chapter 7 bankruptcy filing in the Bankruptcy Court for the Northern District of Illinois. *Id.* at *1. The plaintiffs moved for remand or abstention, and the defendant moved to transfer the case to the Illinois bankruptcy court. *Id.* at *2. The court determined that the bankruptcy court was in the best position to determine the issue of whether federal jurisdiction existed and transferred the case to the Northern District of Illinois for referral to the bankruptcy court pursuant to 28 U.S.C.

---

[1]The Court is not holding that a district court should always refer the case to the bankruptcy court before ruling on a motion to remand. The Court simply finds that in the unique circumstances of this case, referral is in the interest of justice.

§ 1412[2] without determining the motion to remand[3]. *Id.* Section 1412 provides that a district court "may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." The court explained that "the interest of justice" requirement is "a broad and flexible standard" that requires consideration of whether the transfer would "promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness." *Id.* at *3 (citations omitted). The court reasoned that there is a "strong presumption that proceedings related to a bankruptcy case should be transferred to the district where the bankruptcy proceedings are pending." *Id.* at *4 (citations omitted). The court concluded that "the interest of justice and efficient administration of the bankruptcy estate" favored transfer so that the bankruptcy court could determine whether remand or abstention was appropriate. *Id.* at *5. The courts in *Bayou Steel* and *Nelson* addressed the issue similarly by declining to decide the motion to remand and transferring the case to the appropriate bankruptcy court. *Bayou Steel Corp. v. Boltex Mfg. Co.*, 2003 WL 21276338, at *4 (E.D. La. 2003); *Nelson v. First Lenders Indem. Co.*, 1998 WL 378376, at *2 (N.D. Miss. 1998); *See also In re Weldo, Inc.*, 212 B.R. 678, 679 (Bankr. M.D. Al.

---

[2]The Court discussed whether 28 U.S.C. § 1412 or § 1404 should apply and held that § 1412 should apply. *Marquette*, 2006 WL at *4.

[3]The Court recognizes that some courts have held that the district court should determine the issue of remand before deciding whether to transfer a case. *See* 10 COLLIER ON BANKRUPTCY ¶ 9027.09 (15th ed. 2008) ("There is apparently some confusion about whether a motion to remand or a motion to change venue to the home court should be considered first by the court to which the case has been removed. Some courts believe that bankruptcy policy is better carried out if the remand decision is made by the home court."). However, the court agrees with *Marquette*, that under these facts, it is appropriate to transfer the case to the bankruptcy court without deciding the remand issue. *See Marquette*, 2006 WL at *2 n.12 ("The Court recognizes that there is authority supporting the proposition that jurisdiction must be determined first as well as authority that it need not be determined prior to transfer. However, no cited authority is binding precedent and the posture of these consolidated cases and the pending bankruptcy, in conjunction with its possible dismissal and the reasons therefor, favor transfer to the bankruptcy court before resolving the jurisdictional issue.")

1996) ("[T]he bankruptcy court in which the chapter 11 case is pending is in the best position to determine the issues underlying the motion to remand, abstain, or dismiss."); *Consol. Lewis Inc. Corp. v. First Nat'l Bank of Jefferson Parish*, 74 B.R. 648, 651 (E.D. La. 1987) ("[T]he [U.S. District Court for the Eastern District of Louisiana] finds the question of whether the instant action is a core proceeding must be decided by the Bankruptcy Court for the Middle District of Louisiana. Although plaintiffs have asked this Court to remand this action or in the alternative, abstain, to do so would deprive the bankruptcy court of a [28 U.S.C] § 157(b)(3) determination. Consequently, whether this matter should be remanded or abstention should be employed must be determined in the Middle District.")

Like the cases cited above, the Court finds that Judge Stern, with his intimate familiarity with the bankruptcy proceedings, is in the best position to determine if remand or abstention is appropriate and does not wish to deprive him of the opportunity to make that decision. Accordingly, transfer pursuant to § 1412 would promote the interest of justice. The Court does recognize one difference between the above mentioned cases and the instant case–in this case, no party has moved to transfer venue. However, this distinction is of no moment because the Court may *sua sponte* transfer a case. *In re Henderson*, 197 B.R. 147, 156 (Bankr. N.D. Al. 1996) (stating that a district court may *sua sponte* transfer a case under 28 U.S.C. §§ 1404 and 1412). Furthermore, NexBank appears to agree that this case should be heard in the bankruptcy court: "This case belongs in bankruptcy court–either here or in New Jersey. . ." (Resp. 1). The Court puts the parties on notice that it is considering transferring this case. If the parties object to this transfer, they should file briefing to show cause why this case should not be transferred within 14 days of the date of this Order.

## III. CONCLUSION

The Court declines to rule on ORIX's Motion to Remand and is considering transferring this case to the U.S. District Court for the District of New Jersey for referral to the Bankruptcy Court administering *In re Marcal Paper Mills, Inc.* Any party who objects to this transfer should file briefing within 14 days of this Order showing cause why the case should not be transferred.

**SO ORDERED**.

JULY 15, 2008

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE